No. 20-7540

## IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

JOSEPH RANDOLPH MAYS,

*Plaintiff-Appellant,*

v.

T.B. SMITH, Warden, *et al.*

*Defendants-Appellees.*

On Appeal from the U.S. District Court for the Eastern District of North Carolina
Case No. 5:18-CT-3186-FL

## BRIEF OF *AMICI CURIAE* THE RODERICK AND SOLANGE MACARTHUR JUSTICE CENTER AND RIGHTS BEHIND BARS IN SUPPORT OF PLAINTIFF-APPELLANT

Samuel Weiss
RIGHTS BEHIND BARS
416 Florida Avenue NW
#26152
Washington, D.C. 20001
(202) 455-4399

Easha Anand
*Counsel of Record*
RODERICK & SOLANGE MACARTHUR
 JUSTICE CENTER
2443 Fillmore Street,
#380-15875
San Francisco, CA 94115
(510) 588-1274
easha.anand@macarthurjustice.org

*Counsel for Amicus Curiae*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. _20-7540_        Caption: _Mays v. Smith, et al._

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Roderick and Solange MacArthur Justice Center, Rights Behind Bars_
(name of party/amicus)

_____

 who is _____amici curiae_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.     Is party/amicus a publicly held corporation or other publicly held entity?     ☐YES ☑NO


2.     Does party/amicus have any parent corporations?                                                   ☐YES ☑NO
       If yes, identify all parent corporations, including all generations of parent corporations:




3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
       other publicly held entity?                                                                                         ☐YES ☑NO
       If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Easha Anand                          Date:    January 14, 2021

Counsel for:  Roderick and Solange MacArthur Justice Center, Rights Behind Bars

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT

TABLE OF AUTHORITIES .......................................................................ii

INTEREST OF AMICI CURIAE ........................................................... 1

INTRODUCTION ................................................................................. 2

SUMMARY OF THE ARGUMENT ...................................................... 4

ARGUMENT ......................................................................................... 5

I.    A Damages Remedy Has Been Available for Routine Law Enforcement Misconduct Since the Founding. ............................... 5

II.   This Case Does Not Differ Meaningfully From Previous *Bivens* Cases. ................................................................................................ 9

III.  Congress Has Developed No "Alternative, Existing Process For Protecting The Injured Party's Interest" In This Case. ............... 11

    A.   The Bureau of Prisons' Grievance Process Cannot Be An Adequate Alternative Remedy To The Harm Of Retaliation For Filing A Grievance In The First Place. .......................... 11

    B.   No Other "Alternative Remedial Structure" Limits This Court's Power To Infer A *Bivens* Cause Of Action. .............. 18

IV.  No "Special Factors Counsel[] Hesitation."................................... 20

CONCLUSION ..................................................................................... 31

# TABLE OF AUTHORITIES

## Cases

*Aamer v. Obama*, 742 F.3d 1023 (D.C. Cir. 2014) .................................. 19

*Agostini v. Felton*, 521 U.S. 203 (1997) ..................................................... 10

*Atkisson v. Holder*, 925 F.3d 606 (4th Cir. 2019) .................................... 17

*Bamdad v. Gavin*,
   No. CV 13-0296, 2016 WL 1658657
   (C.D. Cal. Feb. 5, 2016) ............................................................................ 15

*Barnes v. Broyles*,
   No. CV 13-737, 2016 WL 155037 (D.N.J. Jan 12, 2016) ................... 15

*Bates v. Clark*, 95 U.S. 204 (1877) .............................................................. 6

*Belknap v. Schild*, 161 U.S. 10 (1896) ........................................................ 6

*Bistrian v. Levi*, 912 F.3d 79 (3d Cir. 2018) ........................................ 19, 22

*Bivens v. Six Unknown Named Agents of Fed. Bureau of
   Narcotics*, 403 U.S. 388 (1971) ...................................................... 3, 6, 7

*Boule v. Egbert*, 980 F.3d 1309 (9th Cir. 2020) ....................... 4, 26, 29, 30

*Bush v. Lucas*, 462 U.S. 367 (1983) ..................................................... 17, 18

*Callahan v. Fed. Bureau of Prisons*,
   965 F.3d 520 (6th Cir. 2020) ...................................................... 4, 12, 24

*Carlson v. Green*, 446 U.S. 14 (1980) .............................................. *passim*

*Carvalho v. Bledsoe*,
   No. 3:11-1995, 2019 WL 3801453 (M.D. Pa. Aug. 13, 2019) ............. 15

*Chappell v. Wallace*, 462 U.S. 296 (1983) .......................................... 17, 18

*Coates v. Fed. Bureau of Prisons*,
   No. 15-CV-01109, 2015 WL 9899139
   (D. Colo. Dec. 31, 2015) ........................................................................... 15

*Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001) ...................... 12, 17, 24

*Dale v. Lappin*, 376 F.3d 652 (7th Cir. 2004) ......................................... 15

*Davis v. Passman*, 442 U.S. 228 (1979) ................................................... 28

*DeBenedetto v. Salas*,
   No. 13-cv-07604, 2020 WL 2836764
   (N.D. Ill. June 1, 2020) ............................................................................ 15

*Doe v. Meron*, 929 F.3d 153 (4th Cir. 2019) ........................................... 17

*Does 8-10 v. Snyder*, 945 F.3d 951 (6th Cir. 2019) .................................. 13

*Doss v. Bureau of Prisons*,
    No. 1:19-cv-0272, 2020 LEXIS 11795
    (M.D. Pa. Jan. 23, 2020) ...................................................................... 15

*Dunbar Corp. v. Lindsey*, 905 F.2d 754 (4th Cir. 1990) ........................ 21

*Farmer v. Brennan*, 511 U.S. 825 (1994) ........................................ 9, 22

*FDIC v. Meyer*, 510 U.S. 471 (1994) ....................................................... 17

*Forde v. Miami Fed. Dep't of Corr.*,
    730 F. App'x 794 (11th Cir. 2018) ............................................... 15, 16

*Green v. Carlson*, 581 F.2d 669 (7th Cir. 1978) ................................. 9, 10

*Griffin v. Malatinsky*,
    No. 17-CV-12204, 2018 WL 3198547
    (E.D. Mich. June 29, 2018) .................................................................. 15

*Hall v. Clinton*, 235 F.3d 202 (4th Cir. 2000) ....................................... 18

*Hancock v. Rickard*,
    No. 1:18-00024, 2019 LEXIS 229753
    (S.D. W. Va. Oct. 25, 2019) ................................................................ 15

*Hardy v. Shaikh*, 959 F.3d 578 (3d Cir. 2020) ....................................... 16

*Hartman v. Moore*, 547 U.S. 250 (2006) ................................................ 10

*Hicks v. Ferreyra*, 965 F.3d 302 (4th Cir. 2020) ...................................... 9

*Hill v. O'Brien*, 387 F. App'x 396 (4th Cir. 2010) ................................. 16

*Himmelreich v. Fed. Bureau of Prisons*,
    766 F.3d 576 (6th Cir. 2014) ............................................................... 13

*Johnson v. Fernandez*,
    No. 15-CV-71, 2016 WL 10805684 (C.D. Cal. Dec. 7, 2016).............. 16

*Judicial Watch, Inc. v. Rossotti*,
    317 F.3d 401 (4th Cir. 2003).................................................... 17, 18, 24

*Lineberry v. Fed. Bureau of Prisons*,
    923 F. Supp. 2d 284 (D.D.C. Feb. 15, 2013)................................. 13, 15

*McCarthy v. Madigan*, 503 U.S. 140 (1992) ..................................... 12, 14

*Miller v. Norris*, 247 F.3d 736 (8th Cir 2001)........................................ 16

*Minneci v. Pollard*, 565 U.S. 118 (2012) ......................................... 17, 18

*Montalban v. Doe*, 801 F. App'x. 710 (11th Cir. 2020).......................... 13

*Nunez v. Duncan*, 591 F.3d 1217 (9th Cir. 2010) ................................... 16

iii

*Phila. Co. v. Stimson*, 223 U.S. 605 (1912)................................................. 6

*Pinar v. Dole*, 747 F.2d 899 (4th Cir. 1984)............................................ 17

*Porter v. Nussle*, 534 U.S. 516 (2002) ...................................................... 14

*Pumphrey v. Coakley*, 684 F. App'x 347 (4th Cir. 2017) ......................... 15

*Ross v. Blake*, 136 S. Ct. 1850 (2016)...................................................... 25

*Ryncarz v. Thomas*,
    No. 12-CV-01692, 2013 WL 4431322
    (D. Or. Aug. 15, 2013) .......................................................... 15

*Schweiker v. Chilicky*, 487 U.S. 412 (1988) ................................. 10, 17, 18

*Stanford v. Texas*, 379 U.S. 476 (1965) ..................................................... 5

*Toolasprashad v. Bureau of Prisons*,
    286 F.3d 576 (D.C. Cir. 2002) ..................................................... 13

*Tun-Cos v. Perrotte*, 922 F.3d 514 (4th Cir. 2019) ..................... 17, 20, 24

*West v. Fed. Bureau of Prisons*,
    No. 1:09CV01277, 2013 WL 1326532
    (E.D. Ca. Apr. 2, 2013)......................................................... 13, 16

*Westfall v. Erwin*, 484 U.S. 292 (1988) ..................................................... 7

*Wilkie v. Robbins*, 551 U.S. 537 (2007).......................................... 17, 18, 21

*Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18 (1940)............................. 6

*Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017)......................................... *passim*

## Statutes & Regulations

28 C.F.R. § 542.14(d)(1) .......................................................................... 14

28 U.S.C. §1915(g) .................................................................................. 28

28 U.S.C. §1915A .................................................................................... 28

28 U.S.C. §2241 ....................................................................................... 18

28 U.S.C. §2679(b)(2)(A)..................................................................... 8, 19

42 U.S.C. §1983.................................................................................... 3, 28

42 U.S.C. §1997e(a) ............................................................................ 14, 23

42 U.S.C. §1997e(e)................................................................................. 28

Westfall Act, Federal Employees Liability Reform and Tort
    Compensation Act of 1988, Pub. L. No. 100-694,
    102 Stat. 4563 (1988) ............................................................... 7

## Other Authorities

134 CONG. REC. 15,963 (1988) .................................................... 8

141 CONG. REC. H14078 (daily ed. Dec. 6, 1995) ............................ 14, 23

44 Fed. Reg. 62,248-51 (Oct. 29, 1979) ................................. 12

H.R. REP. NO. 100-700 (1988) ................................................. 8

James E. Pfander & Jonathan L. Hunt,
  *Public Wrongs and Private Bills: Indemnification and
  Government Accountability in the Early Republic*,
  85 N.Y.U. L. REV. 1862 (2010) ........................................... 5

NAT'L PRISON RAPE ELIMINATION COMM'N,
  REPORT (June 2009) ...................................................... 16

*Prison and Jail Grievance Policies: Lessons from a Fifty-
  State Survey*, Mich. Law Prison Info. Project
  (Oct. 18, 2015) ......................................................... 13

S. REP. NO. 93-588 (1973) ...................................................... 19

## INTEREST OF AMICI CURIAE[1]

The Roderick and Solange MacArthur Justice Center (RSMJC) is a public interest law firm founded in 1985 by the family of J. Roderick MacArthur to advocate for human rights and social justice through litigation. RSMJC has offices at Northwestern Pritzker School of Law, at the University of Mississippi School of Law, in New Orleans, in St. Louis, and in Washington, D.C. RSMJC attorneys have led civil rights battles in areas that include police misconduct, compensation for the wrongfully convicted, and the treatment of incarcerated men and women. RSMJC litigates appeals related to the civil rights of incarcerated men and women throughout the federal circuits.

Rights Behind Bars (RBB) legally advocates for people in prison to live in humane conditions and contributes to a legal ecosystem in which such advocacy is more effective. RBB seeks to create a world in which people in prison do not face structural obstacles to effectively advocating for themselves in the courts. RBB helps incarcerated people advocate for

---

[1] This brief has not been authored, in whole or in part, by counsel to any party in this appeal. No party or counsel to any party contributed money intended to fund preparation or submission of this brief. No person, other than the amici, its members, or its counsel, contributed money that was intended to fund preparation or submission of this brief. All parties have consented to the filing of this brief.

their own interests and through such advocacy push towards a world in which people in prison are treated humanely.

## INTRODUCTION

Joseph Randolph Mays's complaint in this case alleges the following: In the summer of 2016, Mr. Mays submitted several grievances to the Federal Bureau of Prisons (FBOP) complaining of his treatment at his prison job. Dkt. 69 at *3-5. Shortly thereafter, he was fired, placed in administrative detention, and transferred to a prison further from his dying father—all because, as one correctional officer told him, "someone got in their feelings because you filed a grievance." *Id.* at *6-8. Mr. Mays filed suit, claiming, as relevant here, that correctional officials retaliated against him for exercising his First Amendment right to file grievances. *Id.* at *2. But the district court dismissed Mr. Mays's claim with prejudice, holding that correctional officials could not be held accountable for their unconstitutional retaliation because Mr. Mays was incarcerated at a federal, not a state, facility.[2]

---

[2] In the alternative, the district court also dismissed Mr. Mays's First Amendment retaliation claim without prejudice for failure to exhaust. Dkt. 69 at *20, 27. It also dismissed Mr. Mays's Fifth Amendment claims for due process and for racial discrimination. *Id.* at *24-25. This amicus brief does not address those other rulings.

That was error. Mr. Mays may seek damages under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), against federal correctional officers for retaliating against him in violation of his First Amendment right to file grievances. Although courts may not casually endorse a *Bivens* cause of action, damages remain available under *Bivens* where there is no "alternative remedial structure . . . for protecting the injured party's interest" and there are no "sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1858 (2017) (internal alteration omitted).

This is such a case. Mr. Mays seeks to challenge an "individual instance[]" of retaliation, "which, due to [its] very nature [is] difficult to address except by way of damages actions after the fact." *Id.* at 1862. It can hardly be said that Mr. Mays has an "adequate alternative remedy": Though the FBOP has a grievance system, the harm Mr. Mays complains of is retaliation *for invoking that very system*. And courts considering First Amendment retaliation claims can rely on the well-developed framework generated by claims against state correctional officers under 42 U.S.C. §1983.

3

As several judges has argued since *Abbasi*, a *Bivens* remedy should thus be available for a First Amendment retaliation claim. *See Boule v. Egbert*, 980 F.3d 1309, 1315-16 (9th Cir. 2020); *Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 534 (6th Cir. 2020) (Moore, J., dissenting). This Court should reverse the dismissal with prejudice of Mr. Mays's First Amendment claim.

## SUMMARY OF THE ARGUMENT

Since the Founding, damages remedies have been available for the misconduct of line-level federal officials. *Infra*, §I. *Bivens* channeled those damages actions into claims against federal officers directly under the Constitution.

In *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), the Supreme Court clarified out when damages remedies against federal officials remain available. First, any context in which the Supreme Court previously approved a *Bivens* remedy remains good law. *Id.* at 1856-57. In this case, Mr. Mays's *Bivens* claim—against line-level officials, for First Amendment violations, in a prison setting—has been endorsed by the Supreme Court along each of its dimensions. *Infra*, §II.

Second, even if a case presents a "new context" for a *Bivens* action, a remedy will still lie unless either an "alternative remedial structure" or other "special factors counseling hesitation" suggest that Congress has chosen to channel such claims away from courts. *Id.* at 1857-58. No such alternative remedial scheme exists in this case, *infra*, §III, and no special factors counsel hesitation, *infra*, §IV.

## ARGUMENT

### I.  A Damages Remedy Has Been Available for Routine Law Enforcement Misconduct Since the Founding.

**A.** Civil damages actions against federal officers helped inspire the Bill of Rights. Several influential English cases from the 1760s involved juries awarding damages to individuals harmed by the King's officers. *See Stanford v. Texas*, 379 U.S. 476, 483-84 (1965). Following ratification, the common law tradition routinely recognized personal liability against federal officers for acting outside the scope of the Constitution. *See* James E. Pfander & Jonathan L. Hunt, *Public Wrongs and Private Bills: Indemnification and Government Accountability in the Early Republic*, 85 N.Y.U. L. Rev. 1862, 1874-75 (2010).

For the following two centuries, the Supreme Court repeatedly acknowledged tort liability for federal officials violating the Constitution.

*See Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 21 (1940) (federal officers can be personally liable for damages when exceeding legal authority); *Phila. Co. v. Stimson*, 223 U.S. 605, 619–20 (1912) (federal officers have "personal liability to persons whose rights of property they have wrongfully invaded"); *Belknap v. Schild*, 161 U.S. 10, 18 (1896) (noting that United States "officers and agents" are "personally liable to an action of tort by a private person whose rights of property they have wrongfully invaded or injured, even by authority of the United States"); *Bates v. Clark*, 95 U.S. 204 (1877) (holding personally liable military officials who wrongfully seized private property they mistakenly believed was within Indian territory).

**B.** *Bivens* merely added an additional route to liability—a direct cause of action under the Constitution. In *Bivens*, the Supreme Court held that the Fourth Amendment provided a cause of action to pursue money damages against federal officials that violated a plaintiff's constitutional rights. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 391-92 (1971). The parties agreed that the plaintiffs could obtain some form of damages, as defendants conceded that the plaintiffs would have a claim under state common law, with the

Fourth Amendment functioning as a limitation on the defendants' ability to assert the defense that their actions were a valid exercise of federal power. *Id.* at 391; *see also* Br. for the Resp'ts, *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (No. 301), 1970 WL 136799. The Supreme Court extended the *Bivens* cause of action to a prisoner in *Carlson v. Green*, which held that a cause of action and a damages remedy can be implied to remedy violations of the Eighth Amendment's prohibition against cruel and unusual punishment, 446 U.S. 14, 18 (1980).

**C.** In 1988, the Supreme Court held that federal employees had no absolute immunity from most common law claims, expressly allowing state tort claims against federal officers. *See Westfall v. Erwin*, 484 U.S. 292, 300 (1988). Congress responded by passing the Westfall Act, Federal Employees Liability Reform and Tort Compensation Act of 1988, Pub. L. No. 100-694, 102 Stat. 4563 (1988), which narrowed but preserved the regime of common law remediation. The Act amended the Federal Tort Claims Act (FTCA) to grant immunity to federal officers for state claims and to substitute the federal government as a defendant. The Act, however, made an exception for claims "brought for a violation of the

7

Constitution of the United States." 28 U.S.C. § 2679(b)(2)(A). While the Act ended the use of state tort law against federal officers, it included this exception to preserve the *Bivens* regime that replaced it. *See* H.R. REP. No. 100-700, at 6, (1988) ("Since the Supreme Court's decision in *Bivens* . . . the courts have identified this type of tort as a more serious intrusion of the rights of an individual that merits special attention."); *see also* 134 CONG. REC. 15,963 (1988) (statement of Rep. Frank) ("We make special provisions here to make clear that the more controversial issue of constitutional torts is not covered by this bill.").

The Westfall Act provided that *Bivens*, and *Bivens* alone, would be the appropriate claim against federal officers who violate constitutional rights. While the parties in *Bivens* argued over whether a federal claim directly under the Constitution was necessary given the alternative of state tort remedies, after the Westfall Act the only question is whether the plaintiff should have a *Bivens* remedy or no remedy at all.

Were this Court to adopt defendants' argument, line-level federal correctional officers could violate the First Amendment with impunity. Such a holding would depart from the uninterrupted practice of a civil

8

damages remedies for constitutional violations dating back to the Founding.

## II.    This Case Does Not Differ Meaningfully From Previous *Bivens* Cases.

A *Bivens* remedy will continue to lie for every "context" the Supreme Court has previously considered and endorsed. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1859-60 (2017). "Without endeavoring to create an exhaustive list" of the dimensions that make up a particular "context," the Supreme Court has supplied the following examples: The rank of the officer defendants, the constitutional right at issue, the generality or specificity of the official action, the extent of judicial guidance, the legal mandate under which the officer was operating, and the risk of disruptive intrusion by the judiciary into the other branches. *Id.*

Along each of the "dimensions the Supreme Court has identified as relevant to the inquiry, this case appears to represent not an extension of *Bivens* so much as a replay." *See Hicks v. Ferreyra*, 965 F.3d 302, 311-12 (4th Cir. 2020). Defendants are line-level correctional officials, similar in rank to the officials sued in *Bivens* cases like *Carlson v. Green*, 446 U.S. 14 (1980), and *Farmer v. Brennan*, 511 U.S. 825, 830-31 (1994). *See also Green v. Carlson*, 581 F.2d 669, 671-72 (7th Cir. 1978). The

constitutional right at issue—the First Amendment—is the same constitutional right that was at issue in *Bivens* cases like *Hartman v. Moore*, 547 U.S. 250 (2006).[3] The official action in question—a small group of correctional officers conspiring to retaliate against one inmate— is as specific as the wrongdoing at issue in cases like *Carlson* itself. *See Green*, 581 F.2d at 671. The judicial guidance regarding First Amendment retaliation claims is extensive. *Hartman*, 547 U.S. at 255- 56. And the final two dimensions *Abbasi* considered—the legal mandate under which defendants operate and the risk of disruptive intrusion by courts—are identical between this case and *Carlson*, because both concern suits within the FBOP. 446 U.S. at 20-23; *see also Schweiker v. Chilicky*, 487 U.S. 412, 426 (1988) (risk of disruption has "little bearing on" whether *Bivens* remedy is allowed). In sum, a First Amendment

---

[3] In *Abbasi*, the Supreme Court purported to list the contexts in which it had previously recognized a *Bivens* action and did not include *Hartman*. 137 S. Ct. at 1854-55. But *Hartman* plainly recognized a *Bivens* action. 547 U.S. at 256 (stating that "[w]hen the vengeful officer is federal, he is subject to an action for damages on the authority of *Bivens*"). The Supreme Court has expressly asked that lower courts refrain from holding that "recent cases have, by implication, overruled an earlier precedent." *Agostini v. Felton*, 521 U.S. 203, 237 (1997). This Court should follow that rule here and decline to assume that *Hartman* was implicitly overruled simply because it was not cited in *Abbasi*.

retaliation claim for conduct in a FBOP facility does not meaningfully differ from claims this Court has previously endorsed under *Bivens*.

Even if this case presents a "new *Bivens* context," however, *Abbasi* makes clear that a *Bivens* remedy will still lie, so long as there is neither an adequate alternative remedy for the injury nor any "special factor[] counselling hesitation" before imposing such a remedy. 137 S. Ct. at 1857-58.

## III. Congress Has Developed No "Alternative, Existing Process For Protecting The Injured Party's Interest" In This Case.

"[I]f Congress has created any alternative, existing process for protecting the injured party's interest, that itself may amount to a convincing reason for the Judicial Branch to refrain." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1858 (2017) (internal quotation marks and alterations omitted). Congress has not done so here.

### A. The Bureau of Prisons' Grievance Process Cannot Be An Adequate Alternative Remedy To The Harm Of Retaliation For Filing A Grievance In The First Place.

Defendants claimed below that the FBOP grievance system was such an alternative remedy, arguing that "Congress already has spoken with regard to Mays' claims of alleged retaliation." Dkt. 54 at 24. That is incorrect.

11

**1.** For starters, "Congress" has not spoken at all when it comes to the FBOP grievance process. The FBOP's grievance process was neither enacted nor mandated by Congress. *See Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 534 (6th Cir. 2020) (Moore, J., dissenting). Though the FBOP grievance process has been in effect for over four decades, *see* 44 Fed. Reg. 62,248-51 (Oct. 29, 1979), the Supreme Court did not so much as mention it in *Carlson*, the case extending *Bivens* to prisoners' Eighth Amendment claims, presumably because the *Bivens* test requires an alternative *statutory* scheme, not just a regulatory one.[4] *Carlson v. Green*, 446 U.S. 14, 19-23 (1980). A decade later, the Court discussed the relationship between *Bivens* and federal prisoner suits. *McCarthy v. Madigan*, 503 U.S. 140, 151 (1992). It explained that "Congress did not create the remedial scheme here" and that, as a result, the FBOP process could not be the sort of "equally effective alternative remedy…declared [] be a substitute for recovery under the Constitution." *Id.*

**2.** Even if the FBOP's grievance process were the sort of alternative remedy courts should consider in their *Bivens* analysis, it would not be

---

[4] To be sure, the Supreme Court discussed the FBOP's grievance process in *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001). But it did so only *after* concluding that the FTCA—a statute enacted by Congress—provided the requisite alternative remedy. *Id.*; *see also Callahan*, 965 F.3d at 532 (Moore, J., dissenting).

an *adequate* remedy in a case like this one. The gravamen of Mr. Mays's claim is that he retaliated against *for using the grievance system* itself. Suggesting a sufficient "alternative remedial structure" exists because Mr. Mays could just file a grievance to grieve the retaliation he suffered for filing a grievance in the first place is both Kafkaesque and impractical.

And Mr. Mays is far from the only inmate who has suffered retaliation for utilizing the FBOP's grievance system.[5] The threat of retaliation against an inmate for submitting a complaint is exacerbated in federal prisons because the first phase in the grievance system is an informal complaint within the inmate's facility. *See Prison and Jail Grievance Policies: Lessons from a Fifty-State Survey*, Mich. Law Prison Info. Project (Oct. 18, 2015), at 11, https://www.law.umich.edu/ special/policyclearinghouse/site%20documents/foiareport10.18.15.2.pdf. In theory an inmate can mark his request "Sensitive" and direct it "to the

---

[5] *See, e.g.*, *Montalban v. Doe*, 801 F. App'x. 710 (11th Cir. 2020) (per curiam); *Does 8-10 v. Snyder*, 945 F.3d 951 (6th Cir. 2019); *Himmelreich v. Fed. Bureau of Prisons*, 766 F.3d 576, 577-78 (6th Cir. 2014) (per curiam); *Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 581 (D.C. Cir. 2002); *Lineberry v. Fed. Bureau of Prisons*, 923 F. Supp. 2d 284, 288-89 (D.D.C. Feb. 15, 2013); *West v. Fed. Bureau of Prisons*, No. 1:09CV01277, 2013 WL 1326532, at *2 (E.D. Ca. Apr. 2, 2013).

appropriate Regional Director," 28 C.F.R. § 542.14(d)(1), but in practice that may just serve to highlight the prisoner's grievance.

**3.** Congress has legislated that an inmate must exhaust prison remedies before bringing a *Bivens* action; in doing so, Congress demonstrated that it did not believe such remedies should *displace* a *Bivens* action. *See* 42 U.S.C. § 1997e(a). In *McCarthy*, the Supreme Court held that a federal prisoner did not need to exhaust the FBOP administrative grievance procedures before bringing a *Bivens* claim. 503 U.S. at 142, 149. Congress legislated in response to this ruling and could have decided that FBOP grievance procedures should displace a *Bivens* remedy; instead, it made the more modest decision to extend the exhaustion requirement to apply to such suits. *See* 42 U.S.C. § 1997e(a) (1996); 141 Cong. Rec. H14078, H14105 (daily ed. Dec. 6, 1995) (statement of Rep. Lobiondo). The Supreme Court has interpreted this provision specifically to require exhaustion in *Bivens* actions. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

**4.** The federal grievance system has other practical inadequacies. First, grievance complaints drag on for months before resolution. In theory, if prison officials respond within the given deadlines "[c]omplete

exhaustion of [FBOP] administrative remedies may take over five months after the date of initial filing with the warden." *Forde v. Miami Fed. Dep't of Corr.*, 730 F. App'x 794, 798 (11th Cir. 2018) (per curiam). In practice, FBOP officials often miss those deadlines. *See, e.g.*, *Barnes v. Broyles*, No. CV 13-737, 2016 WL 155037, at *5 (D.N.J. Jan 12, 2016).

Furthermore, the grievance system is unavailable to many inmates. Prison officials regularly fail to provide inmates with the forms required to file a grievance.[6] Worse, prison officials also destroy, delay, or lose complaints by inmates.[7] Prison officials' responses to inmate complaints are often full of errors that make it very difficult for inmates to obtain a

---

[6] *See, e.g.*, *Dale v. Lappin*, 376 F.3d 652, 655-56 (7th Cir. 2004); *DeBenedetto v. Salas,* No. 13-cv-07604, 2020 WL 2836764, at *4 (N.D. Ill. June 1, 2020); *Hancock v. Rickard,* No. 1:18-00024, 2019 LEXIS 229753, at *26-27, (S.D. W. Va. Oct. 25, 2019); *Bamdad v. Gavin*, No. CV 13-0296, 2016 WL 1658657, at *4-5 (C.D. Cal. Feb. 5, 2016); *Coates v. Fed. Bureau of Prisons*, No. 15-CV-01109, 2015 WL 9899139, at *6 (D. Colo. Dec. 31, 2015); *Lineberry*, 923 F. Supp. 2d at 288-89.

[7] *See, e.g.*, *Pumphrey v. Coakley*, 684 F. App'x 347, 349 (4th Cir. 2017) (per curiam); *Carvalho v. Bledsoe,* No. 3:11-1995, 2019 WL 3801453 at *3 (M.D. Pa. Aug. 13, 2019); *Griffin v. Malatinsky*, No. 17-CV-12204, 2018 WL 3198547, at *2 (E.D. Mich. June 29, 2018); *Doss v. Bureau of Prisons*, No. 1:19-cv-0272, 2020 LEXIS 11795, at *29 (M.D. Pa. Jan. 23, 2020); *Ryncarz v. Thomas*, No. 12-CV-01692, 2013 WL 4431322, at *11 (D. Or. Aug. 15, 2013) (finding inmate submitted appeal even though federal prison had no record of it).

remedy.[8] Or prison officials will not respond at all to an inmate's properly filed complaint.[9]

And the FBOP often does not educate inmates on how to navigate the "multi-tiered procedural requirements" of the grievance system, which renders any remedy afforded inmates difficult to obtain. *Johnson v. Fernandez*, No. 15-CV-71, 2016 WL 10805684, at *8 (C.D. Cal. Dec. 7, 2016); *see also Forde*, 730 F. App'x at 800. Even when the prison system does educate inmates on the grievance system, "simple awareness of the grievance procedure from a facility handbook may not be enough. Incarcerated persons experiencing the trauma of sexual abuse, as well as those with vulnerabilities such as mental illness or developmental disadvantages, may have extreme difficulty filling out the correct forms and meeting the strict deadlines." NAT'L PRISON RAPE ELIMINATION COMM'N, REPORT 94 (June 2009), *available at* https://www.

---

[8] *See, e.g.*, *Hardy v. Shaikh,* 959 F.3d 578, 587 (3d Cir. 2020) (prison counselor misled inmate in believing his grievance had been rejected and he needed to file a new one rather than appeal); *Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010) (prison ignored inmate's claim of constitutional violation and cited to incorrect prison policy in response to complaint, causing inmate to miss deadline for appealing decision and sending him on an "almost ten-month wild goose chase").

[9] *See, e.g.*, *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir 2001); *Hill v. O'Brien,* 387 F. App'x 396, 400-01 (4th Cir. 2010); *West*, 2013 WL 1326532, at *2-3.

prisonlegalnews.org/media/publications/nprec_final_report_prison_sexu

al_assault_2009.pdf.

In sum, while the grievance system exists in theory as a vehicle for

inmates to seek redress for abuse by federal prison officials, in practice,

it fails to provide inmates a viable remedy for such abuse.

**4.** The FBOP's grievance system is thus a far cry from the kinds of

alternative remedial schemes that this Court and the Supreme Court

have found indicate a congressional intent to preclude a *Bivens* remedy.

Those alternative remedial schemes included judicial review,[10] monetary

compensation,[11] or both.[12] They were comprehensive, considered, and

---

[10] *See Abbasi*, 137 S. Ct. at 1865 (habeas or injunctive relief); *Schweiker*, 487 U.S. at 424-25 (Social Security system allowed for judicial review); *Tun-Cos v. Perrotte*, 922 F.3d 514, 526-27 (4th Cir. 2019) (immigration system allowed for judicial review of removal orders); *Atkisson v. Holder*, 925 F.3d 606, 621-22 (4th Cir. 2019) (various surveillance statutes, including FISA, SCA, and CFAA, allow claims in federal court).

[11] *See Pinar v. Dole*, 747 F.2d 899, 910-11 (4th Cir. 1984) (Civil Service Reform Act allowed back pay).

[12] *See Chappell v. Wallace*, 462 U.S. 296, 303 (1983) (Uniform Code of Military Justice and Board of Correction of Naval Records allowed for backpay and judicial review); *Minneci v. Pollard*, 565 U.S. 118, 126-30 (2012) (state tort law provided for judicial review and damages); *FDIC v. Meyer*, 510 U.S. 471, 484-85 (1994) (*Bivens* itself provided alternative remedy to suing federal agencies); *Wilkie v. Robbins*, 551 U.S. 537, 551-54 (2007) (state tort law and Administrative Procedures Act provided damages and judicial review); *Bush v. Lucas*, 462 U.S. 367, 382-89 (1983) (Civil Service Commission system provides compensatory damages, back pay, and judicial review); *Malesko*, 534 U.S. at 72-73 (state tort law); *Doe v. Meron*, 929 F.3d 153, 169-70 (4th Cir. 2019) (Military Claims Act provides for damages suits in federal court); *Judicial Watch, Inc. v. Rossotti*, 317 F.3d 401, 410-12 (4th Cir. 2003) ("Taxpayer Bill

congressionally created.[13] And each either operated to provide relief in practice or, if not, had received repeated congressional attention to iron out whatever issues precluded relief.[14]

This Court thus cannot treat the FBOP's grievance process as the sort of "alternative remedial structure…that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Abbasi¸*137 S. Ct. at 1858.

## B. No Other "Alternative Remedial Structure" Limits This Court's Power To Infer A *Bivens* Cause Of Action.

**1.** Defendants argued below that habeas corpus might serve as an "alternative remedial structure." But the writ of habeas corpus cannot prevent the availability of *Bivens* because it cannot redress the alleged harm. For starters, the proposition that a court would allow Mr. Mays to raise *any* of defendants' retaliatory actions—let alone all of them, including his job loss—in a habeas petition under 28 U.S.C. §2241 is questionable at best. *See Abbasi*, 137 S. Ct. at 1863 (question is open);

---

of Rights" provides damages action and various administrative deficiency processes that culminate in judicial review).

[13] *See Chappell*, 462 U.S. at 301-03; *Bush*, 462 U.S. at 382-89; *Hall v. Clinton*, 235 F.3d 202, 204-05 (4th Cir. 2000); *Judicial Watch, Inc.*, 317 F.3d at 410-12.

[14] *See Minneci*, 132 S. Ct. at 624-25; *Wilkie*, 551 U.S. at 551-54; *Schweiker*, 487 U.S. at 425-26.

*Aamer v. Obama*, 742 F.3d 1023, 1035-38 (D.C. Cir. 2014). And in any event, the prospective relief offered by a habeas petition cannot redress Mr. Mays's harm—he cannot be reinstated to his old job when he is now in a different facility; the harms he suffered in administrative detention cannot be undone; and his father has already passed. *See* Dkt. 69 at *5-8.

**2.** Nor is the FTCA the kind of "alternative remedy" that would suggest a "sound reason[] to think Congress might doubt the efficacy or necessity of a damages remedy." *See Abbasi*, 137 S. Ct. at 1858. The FTCA explicitly states that it is not the exclusive remedy for suits brought against individual federal officers for constitutional violations. *See Bistrian v. Levi*, 912 F.3d 79, 92 (3d Cir. 2018); *see also* 28 U.S.C. § 2679(b)(2)(A). The legislative history of the FTCA "made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." *Carlson*, 446 U.S. at 19–20; *see also id.* at 20 (quoting S. REP. NO. 93-588 at 3 (1973)) (FTCA makes federal government "independently liable" for same type of conduct for which *Bivens* "imposes liability upon the individual Government officials involved"). And the Supreme Court squarely held in *Carlson* that the FTCA was not an adequate remedy for

a prison conditions claims—whereas *Bivens* is intended to deter individual officers, FTCA provides liability against the federal government, and the FTCA is limited to cases where state law would allow a claim to go forward, a standard that offers scant protection for many constitutional rights. 446 U.S. at 19–23; *see also Abbasi*, 137 S. Ct. at 1860.

## IV.  No "Special Factors Counsel[] Hesitation."

Finally, *Ziglar v. Abbasi* explained that a *Bivens* remedy is not available where there are "special factors counselling hesitation"—that is, "sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy." 137 S. Ct. 1843, 1857-58 (2017). Neither the district court nor defendants have pointed to any such special factors in this case.

**1.** To begin, none of the usual "special factors" that the Supreme Court has identified are present in this case. This case has no "natural tendency to affect diplomacy, foreign policy, and the security of the nation." *See Tun-Cos v. Perrotte*, 922 F.3d 514, 526 (4th Cir. 2019). Nor is this a case where "Congress has designed its regulatory authority in a guarded way," as in cases involving immigration or the military. *Tun-*

20

*Cos*, 922 F.3d at 526. A First Amendment retaliation claim doesn't raise the sorts of finicky line-drawing problems that courts are ill-suited to resolve. *See Wilkie v. Robbins*, 551 U.S. 537, 554 (2007) (no *Bivens* claim because of "difficulty of defining limits to legitimate zeal on the public's behalf in situation where hard bargaining is to be expected"). To the contrary: The Constitution categorically outlaws punishment based on the exercise of a right to petition, and any difficulties in evaluating First Amendment retaliation claims come solely from problems of proof, which courts are uniquely well-suited to resolve. And Congress has no particular "greater competence"—as it does, for instance, in the civil service or social security contexts—to evaluate retaliation claims. *See Dunbar Corp. v. Lindsey*, 905 F.2d 754, 761 (4th Cir. 1990).

**2.** The district court pointed to three special factors that, it believed, foreclosed a *Bivens* remedy. First, the district court suggested that Congress' passage of the Prison Litigation Reform Act (PLRA) without expressly providing for damages in federal prisoner suits signaled that it had considered and rejected a damages remedy. Dkt. 69 at *24-25. But the district court got it backwards: Congress has legislated with the

understanding that the *Bivens* remedy remained available for prison conditions claims.

The district court observed that in *Abbasi*, the Supreme Court noted that the PLRA was designed in part to reduce the quantity of inmate suits. Dkt. 69 at *24-25. But far from holding that the PLRA forecloses a *Bivens* remedy, the Court simply noted it "could be argued" that the PLRA suggests Congress chose not to extend the *Carlson* damages remedy all inmate claims. *Abbasi*, 137 S. Ct. at 1865. This does not suggest that the PLRA forbids recognizing a *Bivens* remedy for a claim that an individual prison official engaged in an individual act of misconduct.

In fact, the PLRA expressly accepted the availability of a *Bivens* remedy. The Supreme Court reaffirmed the availability of *Bivens* remedies to prisoners in *Farmer v. Brennan*, 511 U.S. 825, 847 (1994), just two years before Congress enacted the PLRA. Nothing in the PLRA suggested Congress was intending to foreclose that remedy. By regulating the procedures for bringing a *Bivens* claim in federal court, the PLRA necessarily presumed that *Bivens* actions would be available when an inmate followed the proper procedures. *Bistrian*, 912 F.3d at 92-

93. The purpose of the PLRA was to decrease frivolous lawsuits, not to preclude legitimate *Bivens* claims altogether; otherwise, it would have made no sense to add an exhaustion requirement prior to filing a *Bivens* lawsuit. *See* 42 U.S.C. § 1997e(a); *see also* 141 Cong. Rec. H14078, H14105 (daily ed. Dec. 6, 1995) (statement of Rep. Lobiondo) ("An exhaustion requirement [as imposed by the PLRA] would aid in deterring frivolous claims: by raising the cost, in time/money terms, of pursuing a *Bivens* action, only those claims with a greater probability/magnitude of success, would, presumably, proceed."). The very statute that regulates how *Bivens* actions are brought cannot simultaneously dictate that no *Bivens* action should exist in the first place.

The legislative history confirms that Congress was well aware of the availability of *Bivens* actions for legitimate claims of prisoner mistreatment. There was no discussion of eliminating *Bivens* actions or limiting their availability. Congress thought the "real problem" was the Supreme Court's holding "that an inmate need not exhaust the administrative remedies available prior to proceeding with a *Bivens* action for money damages only." 141 Cong. Rec. H14078, H14105 (daily ed. Dec. 6, 1995) (statement of Rep. Lobiondo). In other words, Congress

specifically set out to respond to *Bivens* claims for prison rights violations and addressed only its procedural prerequisites, not the validity of the claim itself. If there were any doubt, consider the Supreme Court's statement in *Corr. Servs. Corp. v. Malesko*, a post-PLRA decision, that a federal prisoner in a FBOP facility "may bring a *Bivens* claim against the offending individual officer." 534 U.S. 61, 72 (2001); *see also Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 534 (6th Cir. 2020) (Moore, J., dissenting).

The PLRA simply is not comparable to the sorts of congressional attention this Court has held constitutes a "special factor" precluding a *Bivens* remedy. Congress hasn't paid "frequent and intense" attention to the question of federal prisoners' First Amendment retaliation claims. *Abbasi*, 137 S. Ct. at 1862; *see also Tun-Cos*, 922 F.3d at 526-27 (frequency of amendment of Immigration & Nationality Act suggests special factor); *Judicial Watch, Inc. v. Rossotti*, 317 F.3d 401, 412 (4th Cir. 2003) (no more comprehensive statutory scheme or one that has received more intense scrutiny from Congress than the Internal Revenue Code).

Finally, even if the PLRA were to foreclose *Bivens* actions by prisoners as a general matter, it could not foreclose the *Bivens* claim at issue in this case. That's because the PLRA requires only that prisoners pursue "available administrative remedies," and the Supreme Court has explained that where "officials thwart[] the effective invocation of the administrative process through threats," such processes are not "available" within the meaning of the PLRA. *Ross v. Blake*, 136 S. Ct. 1850, 1862 (2016). In other words, Congress specifically excluded claims like this one—i.e. where a remedy is "unavailable" because of threatened or actual retaliation—from the PLRA's scope.

**3.** The district court was also wrong to claim that a *Bivens* claim should not lie because "courts are ill equipped to deal with the increasingly urgent problems of prison administration." Dkt. 69 at *25. But prison litigation isn't the same as litigation regarding the military, immigration, or federal employment, where courts may not have developed competence. Courts address litigation over prisons—including First Amendment retaliation claims—all the time in the context of §1983 actions.

And supplying a remedy where a guard retaliates against a prisoner for exercising a constitutionally protected right won't enmesh courts in prison governance or difficult line-drawing problems—the Constitution forbids retaliation, plain and simple. *Cf. Boule v. Egbert*, 980 F.3d 1309, 1316 (9th Cir. 2020) (*Bivens* remedy should lie because "[r]etaliation is a well-established First Amendment claim" and because retaliation has "no relation to, or justification based on," duties).

**4.** The district court also suggested that allowing a *Bivens* remedy for prisoner First Amendment retaliation claims would somehow raise separation of powers concerns. Dkt. 69 at *24-25. In support, it pointed to foundational cases in prison law demonstrating that prison law is highly deferential to the decisions of the executive branch. *Id.* These cases do not support the district court's argument but undermine it— they demonstrate that separation of powers concerns are already built into the substantive standards of conditions of confinement jurisprudence, standards that are difficult to meet for just this reason. The district court's invocation of black-letter prison law shows that prison law is already sensitive to separation of powers concerns and that those concerns already operate to make demonstrating liability difficult. There

26

is therefore no additional separation of powers justification for hesitating to create a remedy once a plaintiff has demonstrated a constitutional violation.

Cases like *Abbasi* do not warrant a different result because they involved separation of powers principles above and beyond those in a typical constitutional claim against government officials. In *Abbasi*, plaintiffs sought to apply the Fifth Amendment to high-level executives and their responsibility for "major elements of the Government's whole response to the September 11 attack." 137 S. Ct. at 1861. That is, the separation of powers concerns in *Abbasi* extended beyond the separation of powers concerns inherent to Fourth and Fifth Amendment claims and therefore warranted consideration as a reason to not extend a remedy to every violation. No additional separation of powers concerns are implicated here.

Where a federal function is explicitly mentioned in the Constitution—the military, foreign affairs, or immigration, to name a few—separation of powers concerns are at their apex. But as *Carlson v. Green* explained, the FBOP does not have "independent status in our constitutional scheme." 446 U.S. 14, 19 (1980). Because any separation

of powers concerns raised by courts overseeing litigation against federal prisons are already accounted for by other doctrines circumscribing liability, any such considerations should do not counsel against finding a *Bivens* remedy here.

**5.** Finally, defendants argued below that the "sheer volume of potential suits . . . presents a heavy burden and significant costs on the system" and that "there is no question that some officers might refrain from taking urgent and lawful action in discharging their duties" as a result. Dkt. 54 at 25.

But the floodgates problem is one Congress *has* addressed, in the form of the PLRA. Already, complaints filed by pro se prisoners are subject to the three-strikes rule, which limits serial litigants' ability to proceed in forma pauperis, *see* 28 U.S.C. §1915(g); to pre-docketing screening, *see* 28 U.S.C. §1915A; and to strict limits on what kinds of damages may be recovered, *see* 42 U.S.C. §1997e(e).

Moreover, First Amendment retaliation claims are routinely litigated under 42 U.S.C. §1983 when they're brought against state, rather than federal actors, and courts have been able to handle the resulting deluge. *See Davis v. Passman*, 442 U.S. 228, 248 (1979)

(discounting danger "of deluging federal courts" because §1983 provides parallel remedy); *Boule*, 980 F.3d at 1316 ("Retaliation is a well-established First Amendment claim"). And the Supreme Court has explained that qualified immunity provides "adequate protection" against any potential chilling effects of *Bivens* claims, so the accusation that some officers may be inhibited in performing their duties does not hold water as a "special factor[] counseling hesitation." *Carlson*, 448 U.S. at 19.

**6.** According to *Abbasi* the most critical factor to consider—the factor "of central importance"—is whether plaintiff seeks to challenge "individual instances of discrimination or law enforcement overreach" or instead "large-scale policy decisions." 137 S. Ct. at 1862. *Bivens* remedies are suited to the former, not the latter, for two reasons. *Id.* First, individual instances of misconduct are "due to their very nature . . . difficult to address except by way of damages actions after the fact"; large-scale policy decisions, by contrast, are more amenable to equitable relief. *Id.* at 1862-63. Second, the purpose of *Bivens* is to deter the officer; it's not an appropriate vehicle to "call into question the formulation and implementation of a general policy." *Id.* at 1860.

That factor "of central importance" counsels strongly in favor of allowing a *Bivens* remedy where prison officials retaliate against prisoners for exercising their First Amendment right to file grievances. Those acts of retaliation are individual; First Amendment retaliation claims don't challenge a FBOP policy. Instead, they do the opposite—they challenge the failure of individual officers to comply with FBOP policy which of course forbids unconstitutional retaliation against prisoners. *See Boule*, 980 F.3d at 1316 ("retaliation had no relation to, or justification based on, [defendant's] duties as a" law enforcement officer). For that reason, they are usually—as in this case, *see supra*, 18-20—what *Abbasi* called "damages or nothing" actions. And a First Amendment retaliation claim is unlikely to be shadowboxing with "the formulation and implementation of a general policy." *See Abbasi,* 137 S. Ct. at 1860. Rather, First Amendment retaliation claims seek compensation from individual defendants for individual instances of misconduct—precisely the sort of misconduct *Bivens* is designed to prevent. *Id.* at 1862-63.

Because this case falls squarely within the limited arena *Abbasi* delineated for *Bivens* actions, it should be allowed to proceed.

## CONCLUSION

For the foregoing reasons, this Court should not affirm the dismissal with prejudice of Mr. Mays's First Amendment retaliation claim on the ground that he lacked a *Bivens* claim.

Date: January 14, 2021                    Respectfully submitted,

/s/ Easha Anand

Samuel Weiss                              Easha Anand
RIGHTS BEHIND BARS                        *Counsel of Record*
416 Florida Avenue NW                     RODERICK & SOLANGE MACARTHUR
#26152                                      JUSTICE CENTER
Washington, D.C. 20001                    2443 Fillmore Street,
(202) 455-4399                            #380-15875
                                          San Francisco, CA 94115
                                          (510) 588-1274
                                          easha.anand@macarthurjustice.org

*Counsel for Amici Curiae*

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because this brief contains 6,384 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in Century Schoolhouse 14-point font using Microsoft Word 2019.

Date: January 14, 2021        */s/ Easha Anand*
                             Easha Anand

# CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system. Those who are not registered CM/ECF users will be served by First Class Mail.

Date: January 14, 2021                    */s/ Easha Anand*
                                          Easha Anand